BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Attorneys for Plaintiff and Proposed Class
Counsel

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN TERRY, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; and REAL TIME RESOLUTIONS, INC.,<br><br>Defendant. | Case No. 3:15-cv-01666-DMS-KSC<br><br>**CLASS ACTION**<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:          September 22, 2017<br>Time:          1:30 p.m.<br><br>USDJ:          Dana M. Sabraw<br>Ctrm:          13A, 13th, Carter/Keep<br>USMJ:          Karen S. Crawford<br>Ctrm:          Ste. 1010, 10th Carter/Keep<br><br>Complaint Filed:    July 27, 2015<br>Trial Date:          June 19, 2017<br><br>**DEMAND FOR JURY TRIAL** |

BLOOD HURST & O'REARDON, LLP

00124131

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................. 1

II.   HISTORY OF THE LITIGATION ........................................ 3

    A.   The Complaint and Defendants' Motion to Stay .............................. 3

    B.   Discovery Efforts ......................................................... 3

    C.   Settlement Negotiations ................................................. 4

III.  SETTLEMENT TERMS ...................................................... 5

    A.   The Settlement Class ..................................................... 5

    B.   Relief to Class Members ................................................. 5

        1.   Settlement Payments Mailed Directly to Class Members ................. 5

        2.   Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Award ............... 8

    C.   The Class Notice Program ............................................... 8

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................ 9

    A.   The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation Weigh in Favor of Preliminary Approval ...................... 11

    B.   The Risk, Complexity, Expense, and Duration of the Litigation ........... 12

    C.   The Settlement Provides Significant Relief .............................. 13

    D.   The Extent of Discovery and Stage of Proceedings ....................... 15

    E.   The Experience and Views of Counsel .................................. 16

    F.   The Settlement Is Fair to Plaintiff and Class Members .................. 16

V.    THE CLASS NOTICE PROGRAM SHOULD BE APPROVED ........... 17

VI.   THE PROPOSED CLASS SHOULD BE CERTIFIED ..................... 19

    A.   The Rule 23(a) Requirements Are Satisfied ............................. 19

        1.   The Settlement Class Is Sufficiently Numerous .................... 19

        2.   There Are Common Questions of Law and Fact ................... 19

BLOOD HURST & O'REARDON, LLP

00124131

3. The Class Representative's Claims Are Typical ................... 20

4. The Class Representative and Class Counsel Will Fairly and Adequately Protect the Interests of the Class ....... 21

B. The 23(b)(3) Requirements Are Satisfied ........................................ 21

1. Common Questions Predominate ......................................... 22

2. Class Treatment Is Superior ................................................... 23

VII. PROPOSED CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS .......................................................................................................... 24

VIII. THE PROPOSED SCHEDULE OF EVENTS ......................................... 25

IX. CONCLUSION .......................................................................................... 25

BLOOD HURST & O'REARDON, LLP

00124131

ii

MEMO ISO UNOPPOSED MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................22, 24

*Carr v. Tadin, Inc.*,
   2014 U.S. Dist. LEXIS 179835 (S.D. Cal. Apr. 18, 2014) ..............................18

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................16

*Churchill Vill., LLC v. Gen. Elec. Co.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................9

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992)........................................................9

*Create-A-Card, Inc. v. INTUIT, Inc.*,
   2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22, 2009).............................13

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ................................................................24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................17

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ........................................................20

*Fraser v. Wal-Mart Stores, Inc.*,
   2014 U.S. Dist. LEXIS 177376 (E.D. Cal. Dec. 23, 2014)............................23

*Gaudin v. Saxon Mortg. Servs.*,
   297 F.R.D. 417 (N.D. Cal. 2013) ....................................................12

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................22

*Gonzales v. Arrow Fin. Servs., LLC*,
   660 F.3d 1055 (9th Cir. 2011) ......................................................12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................*passim*

BLOOD HURST & O'REARDON, LLP

00124131

BLOOD HURST & O'REARDON, LLP

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................... 20

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) .................................................................. 22

*Jack v. Hartford Fire Ins. Co.*,
   2011 U.S. Dist. LEXIS 118764 (S.D. Cal. Oct. 13, 2011) ........................... 11

*Jordan v. Los Angeles Cnty.*,
   669 F.2d 1311 (9th Cir. 1982) ..................................................................... 19

*Keilholtz v. Lennox Health Prods., Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ........................................................... 20, 21

*Kim v. Space Pencil, Inc.*,
   2012 U.S. Dist. LEXIS 169922 (N.D. Cal. Nov. 28, 2012) .......................... 13

*Lebrilla v. Farmers Grp., Inc.*,
   119 Cal. App. 4th 1070 (2004) .................................................................... 20

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................... 15, 16

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund*
   *v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ..................................................................... 22

*In re M.L. Stern*,
   2009 U.S. Dist. LEXIS 94671 (S.D. Cal. Oct. 9, 2009) ............................... 17

*In re ML Stern*,
   2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ....................... 10, 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..................................................................................... 17

*Nachsin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ....................................................................... 7

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 10, 15

*Nguyen v. Radient Pharms. Corp.*,
   2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ............................... 15

MEMO ISO UNOPPOSED MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

*In re Nissan Radiator*,
   2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) ............................ 14

*Nobles v. MBNA Corp.*,
   2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) ............................. 13

*Officers for Justice v. Civil Serv. Comm.*,
   688 F.2d 615 (9th Cir. 1982) ........................................................ 2, 9, 10, 11

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................................... 10

*Pereira v. Ralph's Grocery Co.*,
   2010 U.S. Dist. LEXIS 142803 (C.D. Cal. Mar. 24, 2010) ........................... 10

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................*passim*

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) .................................................................. 24

*Simon v. Toshiba Am.*,
   2010 U.S. Dist. LEXIS 42501 (N.D. Cal. Apr. 30, 2010) ............................. 16

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................................ 7

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
   2012 U.S. Dist. LEXIS 113641 (W.D. Ky. Aug. 13, 2012) ........................... 18

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ......................................................................... 21

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ......................................................................... 11

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ......................................................................... 23

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .................................................................. 10, 11

*Vasquez v. Super. Ct.*,
   4 Cal. 3d 800 (1971) ...................................................................................... 24

v   Case No. 3:15-cv-01666-DMS-KSC

00124131

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*,
   2016 U.S. Dist. LEXIS 145701 (N.D. Cal. Oct. 18, 2016) ............................ 10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................... 20

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ....................................................... 20, 22, 24

*Williams v. Costco Wholesale Corp.*,
   2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ................................ 16

*Wright v. Linkus Enters., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) .................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .................................................................. 23, 24

**Statutes and Rules**

15 U.S.C. §1692 (Fair Debt Collection Practices Act). ........................ 1, 3, 12, 20

28 U.S.C. §1715 (CAFA) .......................................................................................... 8

Cal. Bus. & Prof. Code §§17200 (UCL) ................................................................. 1

Cal. Civ. Proc. Code §580b ............................................................................ 11, 14

Cal. Civ. Proc. Code §726 .............................................................................. 11, 14

Cal. Civ. Code §1788 (Cal. Rosenthal Fair Debt Collection
   Practices Act) ....................................................................................... *passim*

Fed. R. Civ. P. 23 ......................................................................................... *passim*

**Secondary Sources**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)
   §11.25 ............................................................................................................. 2

David F. Herr, *Annotated Manual for Complex Litigation* (4th ed. 2008)
   §21.632 ........................................................................................................... 2

BLOOD HURST & O'REARDON, LLP

00124131
MEMO ISO UNOPPOSED MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

Plaintiff Carmen Terry ("Plaintiff") submits this memorandum in support of her unopposed motion for entry of the [Proposed] Order re: Preliminarily Approval of Class Action Settlement. The Settlement Agreement and Release ("Settlement") is concurrently filed.[1]

## I.   INTRODUCTION

Plaintiff seeks preliminary approval of the proposed Settlement of this class action against Defendants JPMorgan Chase Bank, N.A. ("Chase") and Real Time Resolutions, Inc. ("Real Time") (together, "Defendants"). The Settlement meets Plaintiff's goals: Chase has stopped the conduct at issue, and the Settlement provides substantial monetary relief for Settlement Class Members.

Plaintiff alleged Defendants misrepresented the nature of debt that was owed, but nonetheless unenforceable, and attempted to and did collect mortgage payments from California borrowers after the date Chase voluntarily released the lien securing the mortgage loan. As a result, Plaintiff alleged Defendants violated California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§1788, *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*, as well as the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq*. Seven hundred ninety four Settlement Class Members made payments on loans after the loans were no longer enforceable, while 22,565 Settlement Class Loans received the letters alleged to be misleading, but did not make any payments on the unenforceable loans. *See* SA, §I.G. Under the Settlement, all Settlement Class Members will receive a significant portion of that money back from a $4.3 million non-reversionary Settlement Fund, representing about 74% of the total amount of Challenged Payments. *Id*.

Settlement payments will be sent directly to Settlement Class Members –

---

[1]   Capitalized terms have the same meaning as in the Settlement. *See* Declaration of Timothy Blood in Support of Motion for Preliminary Approval of Class Action Settlement ("Blood Decl."), Ex. A, Settlement Agreement ("SA").

no one needs to file a claim. As detailed in §IV.B below, Settlement Class Members who made payments on their mortgage after the point the debt no longer became enforceable, known as "post-release" payments ("Tranche 1" and "Tranche 2" Settlement Class Members), will receive a check for about 76% of the payments made for Tranche 1 members and 38% for Tranche 2 members. Settlement Class Members who did not make any post-release payments ("Tranche 3" Settlement Class Members) will receive payment of about $22, representing their share of the maximum aggregate statutory civil penalty amount available under the Rosenthal Act.

Class Counsel's attorneys' fees and expenses, with fees not to exceed 25% of the Settlement Fund, a requested $5,000 service award to the Class Representative, and the notice and settlement administration costs also will be paid from the Settlement Fund. *See* SA, §§II.A.31. and III.D., G., J-K. No portion of the Settlement Fund will revert to Defendants. Any money remaining after the initial award distribution will be distributed to the Settlement Class or, if the amount remaining is too small to justify redistribution, will be paid to the National Housing Law Project and Consumer Watchdog in accordance with the *cy pres* doctrine. *Id.*, §III.H.3.

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Settlement Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002) ("Newberg"); David F. Herr, *Annotated Manual for Complex Litigation* ("Manual") §21.632 (4th ed. 2008). In so doing, the Court reviews the Settlement to determine that it is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982); *see*

BLOOD HURST & O'REARDON, LLP

00124131

1    *also Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009).

2    The proposed settlement plainly meets the preliminary approval standard.

3    Thus, Plaintiff respectfully requests the Court enter the [Proposed] Order re:

4    Preliminary Approval of Class Action Settlement that: (1) certifies the

5    Settlement Class; (2) designates Plaintiff Carmen Terry as Class Representative;

6    (3) appoints Blood Hurst & O'Reardon, LLP as Class Counsel for the Settlement

7    Class; (4) grants preliminary approval of the Settlement; (5) approves the

8    proposed Class Notice Program; and (6) schedules a Final Approval Hearing.

9    **II.   HISTORY OF THE LITIGATION**

10   The Settlement was reached after hard-fought litigation spanning over two

11   years, which included an Early Neutral Evaluation ("ENE"), three full-day

12   mediation sessions and subsequent negotiations, significant discovery, motion

13   practice, expert work, and preparation for class certification briefing.

14   **A.   The Complaint and Defendants' Motion to Stay**

15   This lawsuit was filed on July 27, 2015, and alleged that Defendants

16   violated California's Rosenthal Act, California's UCL, and the FDCPA, by

17   attempting to collect or actually collecting payments on residential mortgage

18   loans owned or serviced, directly or indirectly, by Chase and secured by real

19   property located in the State of California, after Chase had voluntarily released

20   the lien on the property securing the loan. ECF No. 1.

21   Defendants answered the complaint on September 10, 2015, and thereafter

22   moved to stay the case. ECF Nos. 9-10, 15. While the stay motion was pending,

23   the ENE took place before the Honorable Karen S. Crawford. The Parties did not

24   resolve the Action at that time. On November 6, 2015, Plaintiff successfully

25   opposed Defendants' motion to stay. ECF Nos. 17, 20.

26   **B.   Discovery Efforts**

27   The Parties engaged in comprehensive discovery. Plaintiff propounded

28   several sets of interrogatories, requests for admission, and requests for

BLOOD HURST & O'REARDON, LLP

00124131

production of documents. Blood Decl., ¶¶10-11. After meet-and-confer sessions to resolve objections and establish a detailed protocol for the production of electronically stored information ("ESI"), Defendants produced thousands of pages of documents and data. The data and ESI broadly related to Defendants' policies for releasing loans and post-release collection, and included sample loan files from Settlement Class Members, and detailed payment data for the Settlement Class. Class Counsel created a dedicated document database for this Action and coded and analyzed Defendants' productions. Class Counsel also retained an expert statistician to analyze the payment data. Additionally, Class Counsel subpoenaed discovery from numerous third parties involved in payment collections for Chase. *Id.*, ¶10.

Defendants also took discovery on Class Representative Terry. Terry responded to Chase's sets of interrogatories and document requests. *Id.*, ¶11. Separate and apart from responding to formal discovery requests, Terry devoted time and effort providing documents and information to assist in Class Counsel's pre-filing investigation, participating in the ENE with Judge Crawford, participating in periodic telephone conferences with her counsel, and reviewing and approving pleadings, including the complaint and the Settlement. *Id.*

### C.    Settlement Negotiations

The Parties participated in three mediation sessions before the Honorable Richard Kramer (Ret.) of JAMS on November 29, 2016, January 12, 2017, and January 18, 2017. In connection with these efforts, the Parties submitted and exchanged detailed mediation statements setting forth their respective views as to the strengths of their cases. These settlement negotiations occurred while this Action was being heavily litigated, benefitting from the discovery that was conducted. The last formal mediation session was followed by numerous telephonic conferences until a memorandum of understanding was reached in May 2017. Over the past several months, the Parties continued to negotiate over

the written terms and details of the Settlement, exchanging numerous drafts of settlement documents. Blood Decl., ¶¶12-13.

Every aspect of this Settlement was heavily negotiated, including the overall dollar amount of the Settlement and each aspect of the agreement and exhibits, including the amounts available to individual Settlement Class Members and details surrounding the Notice Program and distribution of Settlement Awards. *Id.*, ¶13. Class Counsel believe the Settlement represents a good and fair outcome that readily meets the fair, reasonable and adequate standard, and is in the best interests of the Settlement Class. *Id.*, ¶19.

## III. SETTLEMENT TERMS

### A. The Settlement Class

The proposed Settlement Class is defined as:

California borrowers who obtained a residential mortgage loan owned or serviced by Chase and secured by real property located in the State of California, as to which, between July 28, 2011 through August 1, 2017, Chase (1) released the lien on the property securing the loan, and (2) directly or indirectly, thereafter attempted to collect or actually collected unpaid balances on the loan after the lien release.

Excluded from the Settlement Class are: (a) members of the class action lawsuit entitled *Banks, et al. v. JPMorgan Chase Bank, N.A.*, Case No. RG12614875 (Cal. Super. Ct.), including the settlement and related actions subject to the separate prior class action settlement in that action; and (b) the Judges to whom the Action is assigned and any members of the Judges' staff or immediate family members. *See* SA, §II.A.29.

### B. Relief to Class Members

#### 1. Settlement Payments Mailed Directly to Class Members

The Settlement Class consists of 23,376 people who fall within one of three tranches: (1) those who made at least one Challenged Payment on their

BLOOD HURST & O'REARDON, LLP

00124131

Purchase Money Mortgages; (2) those who made at least one Challenged Payment on their Non-Purchase Money Mortgages; and (3) those who did not make any Challenged Payments on either Purchase or Non-Purchase Money Mortgages, but received an allegedly deceptive payment communication. SA, §II.A.34-36. The 181 members of Tranche 1 will receive an initial distribution representing about 76% of the total Challenged Payments they made during the Class Period. The 614 members of Tranche 2 will receive an initial distribution of representing about 38% of the total Challenged Payments they made during the Class Period. SA, §III.G.1.; Blood Decl., ¶14. Members of both Tranche 1 and Tranche 2 are eligible for a second distribution if sufficient funds remain. *Id.* The 22,581 members of Tranche 3 will receive an equal share of $500,000, which is the maximum statutory civil penalty amount available under the Rosenthal act, and equates to about $22 per loan. *Id.*

No one will need to make a claim for payment or take any other action in response to the Class Notice. Instead, the Settlement Administrator will directly mail Class Notice and award checks to each Settlement Class Member. SA, §III.F. and H.1. Each Class Notice will be personalized to reflect the amount the recipient is expected to receive under the Settlement.

Any money remaining after the initial distribution will be distributed pro rata to Tranche 1 and 2 Settlement Class Members who cashed their Settlement Payment (the "Second Distribution"). The Second Distribution will occur unless the remaining amount would result in average supplemental payments of $10 or less per Class Member, in which case the leftover funds will be distributed *cy pres* in equal shares to the National Housing Law Project ("NHLP") and Consumer Watchdog ("CW"). *Id.*, §III.G.1.a-b. and H.2-3. Thus, none of the $4.3 million will be returned to Defendants. *Id.*

Given the personalized, direct Mail Notice plan, the automatic Settlement Award check process, and a Second Distribution provision, the Parties anticipate

BLOOD HURST & O'REARDON, LLP

00124131

only a small amount of leftover funds. *Id.*, §III.F-H.

The NHLP and CW are appropriate *cy pres* recipients in this Action. *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of the lawsuit and the class members, including their location); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). NHLP, a 501(c)(3) nonprofit national housing and legal advocacy center, advances housing justice for the poor by increasing and preserving the supply of affordable housing, improving existing housing conditions and management practices, expanding and enforcing low-income tenants' and homeowners' rights, and increasing housing opportunities for racial and ethnic minorities. *See* https://www.nhlp.org/ (last visited Aug. 14, 2017). Part of NHLP's mission is to advocate for fair housing and lending laws. *Id.* NHLP is an appropriate *cy pres* recipient because it helps consumers navigate the mortgage loan process and advocates on behalf of borrowers.

CW, a 501(c)(3) nonprofit organization, has been dedicated to educating and advocating on behalf of consumers for 30 years, with a particular emphasis on Californians. Through policy research, investigation, public education, and advocacy, CW fights to expose and change deceptive corporate practices in a variety of areas, including mortgage lending. CW fields thousands of consumer complaints each year, many from consumers seeking advice on mortgage fraud. CW has researched and reported on fraud and kickbacks in the title, escrow, mortgage and natural hazard disclosure industries. In a February 2010 report, CW exposed rampant fraudulent mortgage modification advertising, which prompted the federal government to shut down 85 online mortgage modification scams. In April 2017, CW filed a petition with the California AG on behalf of aggrieved borrowers overcharged in a real estate kickback scheme. Blood Decl., ¶7. CW is an appropriate *cy pres* recipient because it fights on behalf of consumers against the type of misleading and deceptive business practices

alleged here, including on behalf of home loan borrowers and against banks.

### 2. Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Award

All notice and administration expenses (expected to be approximately $60,000), attorneys' fees and expenses, and a Class Representative service award will be paid from the Settlement Fund. SA, §§II.A.31., III.J-K.; Blood Decl., ¶6. Defendants agree to not oppose Class Counsel's application for reasonable attorneys' fees not to exceed 25% of the Settlement Fund ($1,075,000), plus reimbursement of out-of-pocket expenses (about $27,500 to date). SA, §III.J-K.; Blood Decl., ¶6. Defendants also agree not to oppose any request for a Court-awarded service award of $5,000 to Plaintiff Terry. SA, §III.K.

### C. The Class Notice Program

The Parties have developed a Notice Program with the help of Kurtzman Carson Consultants, LLC (the "Settlement Administrator"), a firm which specializes in developing class action notice plans. Within thirty days of preliminary approval, the "Settlement Administrator will send the personalized Mail Notice to the Settlement Class Members via first-class mail. SA, §§II.A.13-14., 26., and III.F. Before the Mail Notice is sent, the Settlement Administrator will confirm and update addresses through the National Change of Address database. *Id.*, §III.F.1. If Mail Notices are returned with a forwarding address, the Settlement Administrator will resend the Mail Notice to those addresses. *Id*. For Mail Notices returned without a forwarding address, the Settlement Administrator will perform address searches and skip tracing. This address update and remailing process will be used when distributing checks to Settlement Class Members. *Id.*, §III.H. Defendants will provide notice of the proposed Settlement in accordance with CAFA, 28 U.S.C. §1715(b). SA, §III.F.4.

Beyond providing information regarding the Action, the benefits of the Settlement, and Settlement Class Members' options, the Mail Notice will be

BLOOD HURST & O'REARDON, LLP

00124131

personalized by specifying the individual amount of the initial Settlement Award Tranche 1 and 2 members, providing these Settlement Class Members additional information to make an educated decision about the Settlement. *Id*., §III.F.

The Settlement Administrator will also maintain a dedicated Settlement Website (www.TerryMortgageSettlement.com) to provide potential Settlement Class Members with information about the Settlement, a general description of the lawsuit, the Settlement relief, important dates and deadlines, and Settlement Class Members' legal rights. The Settlement Website will post the First Amended Complaint, the Settlement Agreement and its exhibits, the Long Form Notice, this memorandum, and, when filed, the Preliminary Approval Order, memorandum in support of the motion for final approval, memorandum in support of an award of attorneys' fees and reimbursement of costs and expenses, and the Final Approval Order. SA, §§II.A.12., 33. and III.F.2-3.

Finally, the Mail Notice and Settlement Website will also direct Settlement Class Members to a toll-free telephone number hosted by the Settlement Administrator where additional information is available. *Id*., §III.F.3., Exs. 1-3.

## IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court. *Officers for Justice*, 688 F.2d at 625. In making this determination, the Court should evaluate the fairness of the settlement in its entirety. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety.").

Settlements of class actions are strongly favored. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also Churchill Vill., LLC v. Gen. Elec. Co*., 361 F.3d 566, 576

BLOOD HURST & O'REARDON, LLP

00124131

(9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). By their very nature, because the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense"). Moreover, settlements negotiated by experienced counsel at arm's-length are entitled to a presumption of fairness. *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 145701, at \*743 (N.D. Cal. Oct. 18, 2016) ("The Settlement is also the product of arms'-length negotiations by experienced Class Counsel; as such, it is entitled to an initial presumption of fairness."). Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Settlement to determine whether notice should be sent to the Class. *In re ML Stern*, 2009 U.S. Dist. LEXIS 31650, at \*9-10; *Pereira v. Ralph's Grocery Co.*, 2010 U.S. Dist. LEXIS 142803, at \*7 (C.D. Cal. Mar. 24, 2010). The Court's review is "'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"[2] *Officers for Justice*, 688 F.2d at 625; *accord Hanlon*, 150 F.3d at 1027.

The Ninth Circuit has articulated various factors to use in evaluating the

---

[2]     Unless otherwise noted, citations are omitted and emphasis is added.

BLOOD HURST & O'REARDON, LLP

00124131

fairness of a class action settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, 2011 U.S. Dist. LEXIS 118764, at \*11 (S.D. Cal. Oct. 13, 2011); *see also Hanlon*, 150 F.3d at 1026 (identifying factors). "The relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." *Officers for Justice*, 688 F.2d at 625.

Here, all relevant factors weigh in favor of preliminary approval.

### A.    The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation Weigh in Favor of Preliminary Approval

Settlements resolve the inherent uncertainty on the merits and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). The Action is not unique in this regard: the Parties disagree about the merits, and there is substantial uncertainty about the Action's ultimate outcome. Plaintiff believes her case is strong, but Defendants have demonstrated the willingness and ability to litigate this Action through trial and appeal.

Assuming litigation was to proceed, the hurdles Plaintiff faces prior to class certification, summary judgment, and a successful verdict are substantial, and the potential upside is limited by the claims and remedies. Defendants argue Plaintiff's injury arises from an election to make a payment following Chase's voluntary release of the second lien on her property, and not from any allegedly deceptive or unlawful conduct. On the merits, Defendants contend that Plaintiff misconstrues both California's "one action" and "security first" rules, Cal. Civ. Proc. Code §726, and the anti-deficiency statute, Cal. Civ. Proc. Code §580b (together, the "Deficiency Statutes").

Defendants also argue Chase's voluntary lien-releases did not extinguish the borrowers' underlying loan obligations and therefore did not waive Defendants' right to request payment. Further, Chase argues because it never sought to foreclose or otherwise enforce its liens after release, it did not violate the Deficiency Statutes. Defendants further contend that their attempts to collect payments were not uniform (precluding certification), and the lien-release letters were not deceptive. In addition, Defendants argue that Tranche 3 Settlement Class Members are not entitled to any damages at all, and even if eligible to receive a portion of a $500,000 Rosenthal Act civil penalty, the potential penalty amount is discretionary and no award is automatic. *See* Cal. Civ. Code §1788.17; 15 U.S.C. §§1692k(a)-(b); *Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013) ("Determining damages from the proposed Rosenthal Act violation may not be as formulaic as Plaintiff suggests. The $500,000 statutory damages amount in 15 U.S.C. §1692k(a)(2)(B) is a ceiling rather than an automatic entitlement." (citation omitted)); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060, 1069 (9th Cir. 2011) (affirming $112,500 Rosenthal Act award to class members).

Given the uncertainties and limited upside of continued litigation, this factor weighs in support preliminary approval of the Settlement Agreement.

**B.    The Risk, Complexity, Expense, and Duration of the Litigation**

The risk, expense, complexity, and duration of the case if litigated rather than settled weighs heavily in favor of preliminary (and, ultimately, final) approval of the Settlement. Given the posture of the case and the amount of the Settlement relative to payments made by Settlement Class Members, there is little advantage to be gained from lengthy, uncertain litigation.

Here, the Settlement provides substantial benefits to Class Members, who need not do anything to receive their awards. The guaranteed recovery also obviates the risk and delay of continued litigation, trial, and appeal – significant

BLOOD HURST & O'REARDON, LLP

00124131

factors considered in evaluating a settlement. *See Create-A-Card, Inc. v. INTUIT, Inc.*, 2009 U.S. Dist. LEXIS 93989, at *13 (N.D. Cal. Sept. 22, 2009). Continued litigation would be time-consuming and expensive, only to possibly obtain less than is immediately available through the Settlement. Indeed, there is a very real risk the Settlement Class may receive nothing. Thus, elimination of delay and expense weighs in favor of approval. *Nobles v. MBNA Corp.*, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair."); *Kim v. Space Pencil, Inc.*, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

By reaching this Settlement, the Parties establish a means for prompt resolution of Settlement Class Members' claims. Direct payment ensures the Settlement Class Members will benefit from the Settlement. Given the alternative of continued, complex litigation before this Court, the risks involved in such litigation that Settlement Class Members might get nothing, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Settlement Class.

### C.   The Settlement Provides Significant Relief

The Settlement Agreement provides real relief for the Settlement Class that will be sent directly to them by first-class mail. The payments amounts are logically structured to reflect the risk and likelihood of receiving full recovery. For example, those in Tranche 3 have no ability to recover more than their portion of Rosenthal Act civil penalties, since none of them made any payments after the security underlying their mortgage loans was released.

Under the Settlement, Tranche 1 recipients will recover a higher

percentage of the amounts they paid after the security underlying their mortgage loans was released, reflecting the relatively stronger case relative to Tranche 2 members. Tranche 1 members have purchase money loans, while Tranche 2 members have non-purchase money or "hard money" loans. Purchase money loans are loans originally used to purchase the house. Non-purchase money loans are loans not used to necessarily buy a home, such as a home equity loan and many refinance loans.

Civ. Code §580b provides anti-deficiency protection for purchase money mortgagors, and, Plaintiff contends, prohibits collection of legally unenforceable debt. *See* Cal. Code Civ. Proc. §580b. Because Tranche 1 members have purchase money loans, they have a claim under section 580b.

Plaintiff asserts both Tranche 1 and Tranche 2 members have a claim derived from two mortgage related rules; the "one-action" rule under Civ. Code §726(a) which requires a lender to take only one type of legal action to collect on a secured real estate loan and the "security-first" rule, which requires the lender to first go after the security before pursuing any other relief. Plaintiff asserts Tranche 1 and 2 members have claims under this theory, because they are not dependent whether the loan is a purchase and non-purchase money loan, and permits secured creditors only one form of action for the recovery of "any right secured by mortgage upon real property," which means a foreclosure sale. *See* Cal. Code Civ. Proc. §726(a). Defendants argue Section 726 was not violated because the "one action" it governs is an ordinary action at law, Chase's lien releases did not extinguish the debt, and requesting payments is not a prohibited end-run of the security-first requirement because it is not an "action" leaving it to pursue its "one action." Thus, Tranche 1 Settlement Class Members have two theories of relief where Tranche 2 only has one, with the first Tranche 1 theory being more direct and less uncertain, thereby justifying a difference in relief amount under the Settlement. *See In re Nissan Radiator*, 2013 U.S. Dist. LEXIS

BLOOD HURST & O'REARDON, LLP

116720, at *30-31 (S.D.N.Y. May 30, 2013) (citing precedent and overruling objection to tiered compensation); *Nguyen v. Radient Pharms. Corp.*, 2014 U.S. Dist. LEXIS 63312, at *20-21 (C.D. Cal. May 6, 2014) (same).

In evaluating the fairness of consideration offered in settlement, the court should give significant weight to the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### D.     The Extent of Discovery and Stage of Proceedings

This factor "evaluates whether the parties have sufficient information to make an informed decision about settlement." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (citations omitted). The court is focused not on formal discovery but "on whether the parties carefully investigated the claims before reaching a resolution." *Id.* "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

Here, the Settlement was reached after protracted formal and informal settlement negotiations, motion practice, and extensive discovery. §II above. All of this information allowed Class Counsel, who are experienced in prosecuting complex class action claims, "to make reasoned and informed settlement

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

decisions." *In re LinkedIn*, 309 F.R.D. at 588. Moreover, the fact that the Settlement was negotiated over the course of several mediation sessions in front of an experienced mediator is one factor that demonstrates the Settlement was not collusive. *See*, *e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at *13 (S.D. Cal. April 13, 2009) (settlement sound where it "was reached with the supervision and assistance of an experienced and well-respected independent mediator"). Further, the nature of subsequent negotiations between the Parties, the experience of Class Counsel, and the fair result reached are illustrative of arms-length negotiations.

### E. The Experience and Views of Counsel

Class Counsel have substantial experience serving as class counsel in consumer fraud class actions, and they endorse the Settlement as fair, reasonable, and adequate. Blood Decl., ¶19, Ex. C.

### F. The Settlement Is Fair to Plaintiff and Class Members

The proposed Settlement is fair as to all Settlement Class Members in that they need not do anything to receive the substantial Settlement Payments. Further, Plaintiff does not receive any unduly preferential treatment. With the exception of a potential $5,000 service award to account for her willingness to step forward and represent other Settlement Class Members and to compensate her for her time and effort devoted to the Action, Plaintiff is treated the same as every other Settlement Class Member. SA, §III.K. Such service awards are "fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958; *see also Simon v. Toshiba Am.*, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr. 30, 2010) (awards of $5,000 are "presumptively reasonable"); *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010)

("Although [Plaintiff] seeks a $5,000 service fee for himself which is not available to other class members, the fee appears to be reasonable in light of [Plaintiff's] efforts on behalf of the class members."); *In re M.L. Stern*, 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. Oct. 9, 2009) ($15,000 awards).

## V.    THE CLASS NOTICE PROGRAM SHOULD BE APPROVED

The threshold class notice requirement is whether the distribution method was "reasonably calculated" to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt-out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. *Mullane*, 339 U.S. at 314-15. In this Circuit, notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Hanlon*, 150 F.3d at 1025 (notice should provide class members with the opportunity to opt-out and pursue other recovery opportunities). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The proposed Class Notice is written in simple terminology, and satisfies these requirements. It includes: (1) basic information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Defendants related to the Action will be released if the Class Member does not opt-out from the Settlement; (6) the names

BLOOD HURST & O'REARDON, LLP

of Class Counsel and information regarding attorneys' fees, expenses, and the service award; (7) the Final Approval Hearing date; (8) an explanation that each Settlement Class Member has the right to appear at the Final Approval Hearing; and (9) the Class Website address and a toll-free number where additional information can be obtained. *See* SA, Exs. 1-2.

The contents of the proposed Class Notice are more than adequate, and they comply with the Federal Judicial Center's model class action notices. *See* https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited Aug. 14, 2017); *In re Skechers Toning Shoe Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky. Aug. 13, 2012) (approving class notices that "comply with the Federal Judicial Center's illustrative class action notices"); Fed. R. Civ. P. 23 Advisory Committee Notes (2003); *Carr v. Tadin, Inc.*, 2014 U.S. Dist. LEXIS 179835, at *22 (S.D. Cal. Apr. 18, 2014) (approving a notice of class action settlement, observing "the notices . . . 'mirror the exemplar notices set forth in the Federal Judicial Center, Class Action Notice and Claims Process Checklist (2010)'"). The Class Notice provides Settlement Class Members with sufficient information to make an informed decision on whether to object to or opt out of the Settlement. As such, it satisfies the content requirements of Rule 23. *Rodriguez*, 563 F.3d at 962.

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. The independent Settlement Administrator will provide direct notice to the Settlement Class after preliminary approval of the Settlement. As discussed above, the Settlement Administrator will send Mail Notice directly to the Class Members via first-class mail after re-checking and updating address information. Class Notice will also be available through the Class Website specifically established for this Action.

Thus, the contents and dissemination of Class Notice Program constitutes the best notice practicable, and fully complies with Rule 23's requirements.

## VI.  THE PROPOSED CLASS SHOULD BE CERTIFIED

The Ninth Circuit recognizes the propriety of certifying a settlement Class to resolve consumer lawsuits. *See Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *Id.* However, where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *See Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")). Here, the preliminary certification of the Settlement Class is appropriate for purposes of settlement because all the requirements of Rule 23 have been met.

### A.    The Rule 23(a) Requirements Are Satisfied

#### 1.    The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The Settlement Class consists of 23,376 persons. SA, §I.G. Thus, it would be impracticable to join all members of the Settlement Class. *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

#### 2.    There Are Common Questions of Law and Fact

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of

BLOOD HURST & O'REARDON, LLP

00124131

the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Still, "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019. Here, a classwide proceeding will generate a common answer to the primary questions in this case: whether Defendants misrepresented in form letters and other collection attempts that Settlement Class Members' mortgages debts were enforceable despite the lien releases, and whether their uniform conduct violated California's Deficiency Statutes, the Rosenthal Act, and the FDCPA. Finally, by its very nature, determination of the declaratory relief claim will generate common answers. *See Lebrilla v. Farmers Grp., Inc.*, 119 Cal. App. 4th 1070, 1086 (2004) (finding declaratory and injunctive relief claims under the UCL appropriate for class treatment where the court had to interpret a uniform insurance contract and enforce its terms as to the entire class).

### 3.    The Class Representative's Claims Are Typical

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009). The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id*. For example, certifying UCL and CLRA claims, the court in *Keilholtz v. Lennox Health Prods., Inc.*, 268

F.R.D. 330 (N.D. Cal. 2010) found that typicality was satisfied because "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id*. at 338.

Typicality is met here, as Plaintiff and the proposed Settlement Class assert the same claims, arising from the same course of conduct: Defendants' attempts to collect mortgage payments after the date Chase released its liens. Plaintiff and Settlement Class Members also seek the same relief for the same alleged wrongful conduct. Plaintiff's claims are the same as those of other Settlement Class Members. Therefore, the typicality requirement is met.

**4.    The Class Representative and Class Counsel Will Fairly and Adequately Protect the Interests of the Class**

Rule 23(a)(4) requires that "'the representative parties will fairly and adequately protect the interests of the class.'" In the Ninth Circuit, adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *See*, *e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020.

For Settlement purposes, the Parties agree that adequacy has also been met. First, proposed Class Counsel are qualified and experienced in class action litigation. *See* Blood Decl., Ex. C (Firm Resume for BHO). Further, proposed Class Counsel have substantial experience prosecuting these types of class actions in particular. *See* Blood Decl., ¶19, Ex. C. Second, the interests of Plaintiff and Settlement Class Members are fully aligned and conflict free: Plaintiff and Settlement Class Members allege the same claims, they are seeking redress from the same conduct, and there are no disabling conflicts of interest.

**B.    The 23(b)(3) Requirements Are Satisfied**

Rule 23(b)(3) certification is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action."

*Hanlon*, 150 F.3d at 1022 (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure* §1777 (2d ed. 1986)). There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. As such, Rule 23(b)(3) encompasses those cases "'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

### 1.  Common Questions Predominate

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011). "Predominance is a test readily met in certain cases alleging consumer [] fraud." *Amchem*, 521 U.S. at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Federal Practice and Procedure* §1778; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that commonality and typicality tend to merge).

The predominance requirement is satisfied here. As discussed above, Plaintiff alleges the Settlement Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. The central issue for every claimant is whether Defendants' attempts to collect money misrepresented as due

BLOOD HURST & O'REARDON, LLP

1   and owing violated California's Deficiency Statutes. This primary issue

2   predominates and constitutes the "heart of the litigation" because it would be

3   decided in every trial brought by individual Settlement Class Members and can

4   be proven or disproven with the same classwide evidence. Under these

5   circumstances, predominance is satisfied. *Fraser v. Wal-Mart Stores, Inc.*, 2014

6   U.S. Dist. LEXIS 177376, at *18 (E.D. Cal. Dec. 23, 2014) (granting class

7   certification of Section 1747.08 claims based on defendant's common policy of

8   requesting customers' ZIP codes, stating "the common question of whether or

9   not customers were requested and required to provide their ZIP code when using

10  a credit card . . . predominates over any individual issue").

### 2.   Class Treatment Is Superior

12  Rule 23(b)(3) sets forth the relevant factors for determining whether a

13  class action is superior to other available methods for the fair and efficient

14  adjudication of the controversy. These factors include: (i) the class members'

15  interest in individually controlling separate actions; (ii) the extent and nature of

16  any litigation concerning the controversy already begun by or against class

17  members; (iii) the desirability or undesirability of concentrating the litigation of

18  the claims in the particular forum; and (iv) the likely difficulties in managing a

19  class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*,

20  253 F.3d 1180, 1190-92 (9th Cir. 2001). "'[C]onsideration of these factors

21  requires the court to focus on the efficiency and economy elements of the class

22  action so that cases allowed under subdivision (b)(3) are those that can be

23  adjudicated most profitably on a representative basis.'" *Id*. at 1190; *see also*

24  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding

25  the superiority requirement satisfied where granting class certification "will

26  reduce litigation costs and promote greater efficiency").

27  Application of the Rule 23(b)(3) "superiority" factors shows that a class

28  action is the preferred procedure for this settlement. The potential monetary relief

for each Class Member is too small to justify individual litigation even if liability is proven. *Zinser*, 253 F.3d at 1191; *Wiener*, 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for Class Members to pursue their claims against Defendants on an individual basis. *Hanlon*, 150 F.3d at 1023; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this Action as a class action. *See Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). As such, under the circumstances presented here, a class action is clearly superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied.

## VII.  PROPOSED CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS

The Parties also requests that the Court designate Plaintiff Carmen Terry as Class Representative for the Settlement Class. As discussed above, Plaintiff will fairly and adequately protect the interests of the Settlement Class.

Rule 23(g)(1) also requires the Court to appoint class counsel to represent the interests of the Settlement Class. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005). The Parties respectfully request that Blood Hurst & O'Reardon, LLP ("BHO") be appointed Class Counsel for the Class. As set forth above, BHO is experienced and well equipped to vigorously, competently, and efficiently represent the proposed Settlement Class. *See* Blood Decl., Ex. C. Accordingly, the Court should appoint Timothy G. Blood and

BLOOD HURST & O'REARDON, LLP

Thomas J. O'Reardon II of BHO as Class Counsel for the Settlement Class.

**VIII.  THE PROPOSED SCHEDULE OF EVENTS**

The key Settlement-related dates, such as the time to send Mail Notice or to opt-out or object, are based on when preliminary approval of the Settlement is granted, and when the Final Approval Hearing is scheduled. The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| EVENT | DEADLINE |
|-------|----------|
| Dissemination of Class Notice | Within 30 calendar days from entry of the Preliminary Approval Order |
| Briefs in support of final approval and for award of attorneys' fees | No later than 45 days prior to the Final Approval Hearing |
| Deadlines for objections and opt-outs | 30 days before date first set by Court for Final Approval Hearing |
| Notices to appear | No later than 21 days before the Final Approval Hearing |
| Briefs in response to objections and in further support of final approval and attorneys' fees | No later than 7 days prior to the Final Approval Hearing |
| First day Final Approval Hearing can be set | No earlier than 105 days after entry of Preliminary Approval Order |

Accordingly, the Parties request that the Court schedule the Final Approval Hearing one hundred five (105) days after entry of its order granting preliminary approval, or as soon thereafter as the Court's schedule permits.

**IX.   CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court: (1) certify the Settlement Class for Settlement purposes; (2) designate Plaintiff Carmen Terry as Class Representative; (3) appoint BHO as Class Counsel; (4) grant preliminary approval of the Settlement; (5) approve the proposed Class Notice Program; and (6) schedule a Final Approval Hearing.

Respectfully submitted,

Dated: August 21, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP

00124131

MEMO ISO UNOPPOSED MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

HOFFMAN & FORDE,
    ATTORNEYS AT LAW
DANIEL FORDE (248461)
SCHUYLER HOFFMAN (255632)
ERICA J. SULLIVAN (306466)
3033 Fifth Avenue, Suite 225
San Diego, CA 92103
Tel: 619/546-7880
619/546-7881 (fax)
dforde@hoffmanforde.com
shoffman@hoffmanforde.com
esullivan@hoffmanforde.com

LAW OFFICE OF PETER FREDMAN
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA 94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

*Attorneys for Plaintiff*

BLOOD HURST & O'REARDON, LLP

00124131

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on August 21, 2017, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the e-mail addresses denoted on the Electronic Mail

5   Notice List, and I hereby certify that I have mailed the foregoing document or

6   paper via the United States Postal Service to the non-CM/ECF participants

7   indicated on the Electronic Mail Notice List.

8      I certify under penalty of perjury under the laws of the United States of

9   America that the foregoing is true and correct. Executed on August 21, 2017.

10

11                                      *s/ Timothy G. Blood*
                                     TIMOTHY G. BLOOD

12
                                     BLOOD HURST & O'REARDON, LLP
13                                   701 B Street, Suite 1700
                                     San Diego, CA  92101
14                                   Tel: 619/338-1100
                                     619/338-1101 (fax)
15                                   tblood@bholaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO ISO UNOPPOSED MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00124131