BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Attorneys for Plaintiff and Proposed Class Counsel

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN TERRY, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; and REAL TIME RESOLUTIONS, INC.,<br><br>Defendant. | **Case No. 3:15-cv-01666-DMS-KSC**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF TIMOTHY G. BLOOD IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:   September 22, 2017<br>Time:   1:30 p.m.<br><br>USDJ:   Dana M. Sabraw<br>Ctrm:   13A, 13th, Carter/Keep<br>USMJ:   Karen S. Crawford<br>Ctrm:   Ste. 1010, 10th Carter/Keep<br><br>Complaint Filed:   July 27, 2015<br>Trial Date:   June 19, 2017<br><br>**DEMAND FOR JURY TRIAL** |

I, TIMOTHY G. BLOOD, declare:

1. I am a partner at the law firm of Blood Hurst & O'Reardon, LLP, and am one of the counsel of record for Plaintiff in the above-entitled action. I am an attorney duly licensed to practice before all courts of the State of California and in this district. I have personal knowledge of the matters stated herein, and if called upon, I could and would competently testify hereto.

2. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement between Plaintiff Terry and Defendants JPMorgan Chase Bank, N.A. and Real Time Resolutions, Inc. ("Ex. A").

3. Attached hereto as Exhibit B is a true and correct copy of the Proposed Order Preliminarily Approving Class Action Settlement ("Ex. B").

4. Attached hereto as Exhibit C is a true and correct copy of the Firm Resume for Blood Hurst & O'Reardon, LLP ("Ex. C").

5. Based on the discovery taken in this case, there are 795 Settlement Class Loans on which borrowers paid approximately $5.83 million in Challenged Payments, meaning payments made after Chase released its lien on the security underlying the loans, and 22,581 Settlement Class Loans on which no Challenged Payments were made. *See* Ex. A, §I.G. Under the Settlement, all Settlement Class Members will receive a significant portion of that money back from a $4.3 million dollar non-reversionary Settlement Fund that represents about 74% of the total amount of Challenged Payments. *Id*.

6. Under the Settlement, Notice will be sent directly to Settlement Class Members by first class-mail. Each notice will be personalized to state the amount of money the recipient is expected to receive under the Settlement. The Settlement payment will also be sent directly to Settlement Class Members. Settlement Class Members who are in Tranche I will receive about 76% of their post-release payments. Settlement Class Members who are in Tranche II will receive about 38% of their post-release payments. Settlement Class Members

who did not make any post-release payments (referred to as "Tranche 3" Settlement Class Members) will nevertheless receive direct monetary relief. Tranche 1 and Tranche 2 Settlement Class Members will also be eligible to receive payments from a secondary distribution if money remains in the Settlement Fund following the initial distribution, most likely from uncashed checks. The second distribution will occur if enough remains for recipients to receive more than $10. The Settlement Fund will also be used to pay my firm's attorneys' fees not to exceed 25% of the Settlement Fund and expenses, a service award to the Class Representative, and the costs incurred by the Settlement Administrator, such as costs for notice, administration, and distribution of the Settlement payments. *See* Ex. A, §§II.A.31. and III.D., G., J-K.

7.   If any money remains after the secondary distributions and payment of Settlement Costs, it will be distributed in equal shares to the National Housing Law Project and Consumer Watchdog ("CW") in accordance with the *cy pres* doctrine, subject to Court approval. *Id*., §III.H.3. As will be more fully explained in connection with final approval, CW is a 501(c)(3) nonprofit organization that has been dedicated to educating and advocating on behalf of consumers for 30 years. CW helps consumers nationwide, but with a particular emphasis on Californians. Through policy research, investigation, public education, and advocacy, CW fights to expose, confront, and change deceptive corporate practices in a variety of areas, including mortgage lending. I am informed CW fields thousands of consumer complaints each year, many from consumers seeking advice on mortgage fraud. I am further informed that CW has researched and reported on fraud and kickbacks in the title, escrow, mortgage and natural hazard disclosure industries. In a February 2010 report, CW exposed rampant fraudulent mortgage modification advertising, which prompted the federal government to shut down 85 online mortgage modification scams. In April 2017, CW filed a petition with the California Attorney General on behalf of aggrieved

borrowers who were overcharged in a real estate kickback scheme that was referred to the state real estate oversight board for action.

8.   The proposed Settlement Class is defined as:

> California borrowers who obtained a residential mortgage loan owned or serviced by Chase and secured by real property located in the State of California, as to which, between July 28, 2011 through August 1, 2017, Chase (1) released the lien on the property securing the loan, and (2) directly or indirectly, thereafter attempted to collect or actually collected unpaid balances on the loan after the lien release.

Excluded from the proposed Settlement Class are: (a) members of the class action lawsuit entitled *Banks, et al. v. JPMorgan Chase Bank, N.A.*, Case No. RG12614875 (Cal. Super. Ct.), including the settlement and related actions subject to the separate prior class action settlement in that action; and (b) the Judges to whom the Action is assigned and any members of the Judges' staff or immediate family members. *See* Ex. A, §II.A.29.

9.   The Parties, including Ms. Terry, participated in an Early Neutral Evaluation Conference which took place on November 5, 2015, before the Honorable Karen S. Crawford. The Parties did not resolve the Action at that time.

10.   The Parties engaged in extensive formal and informal discovery. My firm, acting as proposed Class Counsel for Plaintiff, propounded several sets of interrogatories, requests for admission, and requests for production of documents on Defendants Chase and Real Time. After meet-and-confer sessions to resolve objections and to establish a detailed protocol for the production and review of electronically stored information ("ESI"), Defendants produced thousands of pages of documents and data. The data and ESI broadly related to Defendants' policies and practices for releasing loans and their post-release collection attempts, as well as sample loan files from absent Settlement Class Members,

1   and detailed payment data for the Settlement Class. Plaintiff's counsel created a
2   dedicated document database for this Action and coded and analyzed
3   Defendants' productions. We also retained an expert statistician to review and
4   analyze the payment data and assist us with settlement negotiations.
5   Additionally, we subpoenaed discovery from numerous third parties involved in
6   payment collections for Chase.

7       11.   Defendants also conducted discovery with respect to Plaintiff Terry. On May 3, 2016, Plaintiff's counsel, provided responses to Chase's sets of interrogatories and document requests. Separate and apart from providing information to respond to Chase's formal discovery requests, Plaintiff Terry devoted substantial time and effort to providing documents and information to assist in our pre-filing investigation, participating in the ENE with Judge Crawford, participating in periodic telephone conferences and exchanging correspondence with my firm, and reviewing and approving pleadings, including the complaint and the Settlement Agreement.

    12.   The Parties participated in three mediation sessions with the Honorable Richard Kramer (Ret.) of JAMS on November 29, 2016, January 12, 2017, and January 18, 2017. In connection with these efforts, the Parties submitted and exchanged detailed mediation statements setting forth their respective views as to the strengths of their cases. These settlement negotiations occurred while the Action was being heavily litigated. As a result, the Parties' respective positions were the fruits of the discovery that had been conducted and analysis of the claims and issues. The last formal mediation session was followed by numerous telephonic conferences until a memorandum of understanding was reached in May 2017. Over the past several months, the Parties have exchanged numerous drafts of settlement documents, further exchanges of information and numerous drafts the Settlement Agreement and related documents, as the Parties continued negotiating all aspects of the Settlement.

13. Every aspect of this Settlement was heavily negotiated, from the overall dollar amount of the Settlement to each aspect of the Settlement Agreement and exhibits, including the amounts available to individual Settlement Class Members, the details surrounding the Notice Program, and the distribution of Settlement Awards.

14. The Settlement Class consists of 23,376 persons who fall within one of three tranches: (1) those who made at least one Challenged Payment on their Purchase Money Mortgages; (2) those who made at least one Challenged Payment on their Non-Purchase Money Mortgages; and (3) those who did not make any Challenged Payments on either Purchase or Non-Purchase Money Mortgages. Ex. A, §II.A.34-36. The 181 Members of Tranche 1 will receive an initial distribution representing about 76% of the total Challenged Payments they made during the Class Period. The 614 members of Tranche 2 will receive an initial distribution representing about 38% of the total Challenged Payments they made during the Class Period. Id., §III.G.1.a-b. Members of both Tranche 1 and Tranche 2 are eligible for a second distribution if sufficient funds remain. *Id*. The 22,581 members of Tranche 3 will receive equal shares of $500,000 (approximately $22 each), which is the maximum amount of statutory penalties available under the Rosenthal Act. *Id*., §III.G.1.c.

15. Payments will be mailed directly to Settlement Class Members, so no one will need to make a claim.

16. All notice and claims administration expenses (estimated to be about $60,000), attorneys' fees and expenses, and a Class Representative service award will be paid from the Settlement Fund. Ex. A, §§II.A.31., III.J.-K. Defendants agree to not oppose Plaintiff's counsel's application for attorneys' fees not to exceed 25% of the Settlement Fund ($1,075,000), plus reimbursement of out-of-pocket expenses (approximately $27,500 to date). *Id.*, §III.J.-K. Defendants also agree not to oppose any request for a Court-awarded service

award of $5,000 to Plaintiff Terry. *Id.*

17. The Parties developed a Notice Program with the assistance of Kurtzman Carson Consultants, LLC (the "Settlement Administrator"), a firm which specializes in developing class action notice plans. *See* www.kccllc.com.

18. The Settlement was reached after over two years of hard-fought litigation, which included protracted formal and informal settlement negotiations, work with an expert, motion practice, and extensive discovery. The nature of the negotiations between the Parties, my firm's experience as longstanding class action attorneys, and the fair result reached are illustrative of the arms'-length negotiations that led to the Settlement Agreement.

19. My firm and I have substantial experience serving as class counsel in a variety of consumer protection class actions, including those involving mortgage loans. I believe that a settlement of the Action on the terms reflected in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiff and the Settlement Class.

20. Pursuant to §III.B. of the Settlement Agreement, attached hereto as Exhibit D is a true and correct copy of the First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 21, 2017, at San Diego, California.

By:     *s/ Timothy G. Blood*
        TIMOTHY G. BLOOD

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 21, 2017.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com