# EXHIBIT D

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

Attorneys for Plaintiff and Proposed Class
Counsel

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN TERRY, On Behalf of Herself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; and REAL TIME RESOLUTIONS, INC.,<br><br>Defendant. | Case No. 3:15-cv-01666-DMS-KSC<br><br>**CLASS ACTIION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>USDJ:     Dana M. Sabraw<br>Ctrm:     13A, 13th, Carter/Keep<br>USMJ:    Karen S. Crawford<br>Ctrm:     Ste. 1010, 10th Carter/Keep<br><br>Action Filed:    July 27, 2015<br>Trial Date:      June 19, 2017<br><br>**DEMAND FOR JURY TRIAL** |

BLOOD HURST & O'REARDON, LLP

00125325

CARMEN TERRY (referred to individually as "Ms. Terry" or as "Plaintiff"), individually and on behalf of all others similar situated, brings this Class Action Complaint for Damages against Defendants JPMORGAN CHASE BANK NA ("Chase") and REAL TIME RESOLUTIONS, INC. ("Real Time") (collectively "Defendants") and based on personal knowledge and on information and belief alleges as follows:

## INTRODUCTION

1.     This is a class action brought pursuant to Fed. R. Civ. P. 23 arising out of Defendants' unlawful debt collection practices. Defendants attempted to collect or actually collected on residential purchase or refinancing loans that were previously extinguished by Chase and to which Plaintiff and other Class members had no obligation to pay.

2.     Chase took actions for its own benefit to affirmatively release its security interest in Plaintiff's and other Class members' residential and refinancing loans. By releasing its security interest, Chase had no legal means of enforcing the loans and collecting on them. Nonetheless, Chase, with the assistance of collection agency Real Time, illegally collected or attempted to collect on the loans by systematically misrepresenting the status of the loans and Plaintiff's and Class members' obligations under the loans, and initiating debt collection procedures in an attempt to pressure Plaintiff and other Class members to pay on the loans that are no longer enforceable and owed.

3.     Defendants' conduct violates California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.* (the "UCL"), the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Civil Code § 1788, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiff, on behalf of herself and others similarly situated, seeks actual and punitive damages, civil penalties, restitution, declaratory relief to define the parties' rights and obligations, and injunctive relief to prevent Defendants from

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00125325

BLOOD HURST & O'REARDON, LLP

collecting on the released loans and misrepresenting the obligations of the parties and status of the loans.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). There are 100 or more Class members, the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and at least one member of the Class is a citizen of a State diverse from Defendants.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

    a. are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district;

    b. do substantial business in this district;

    c. caused a substantial part of the harm within this district; and

    d. are subject to personal jurisdiction in this district.

## PARTIES

6.     Plaintiff Carmen Terry is a natural person who resides in the City of Oceanside, County of San Diego, State of California.  At all times relevant herein, Ms. Terry owned and occupied entirely the single family residence located in Oceanside, California 92056 (the "Terry Property").

7.     Defendant JP Morgan Chase, N.A. is a Delaware corporation with its principal place of business in New York, New York.

8.     Defendant Real Time Resolutions, Inc. is a Texas corporation with headquarters in Dallas, Texas.  Real Time is a full service debt collection agency specializing in mortgage loans.

9.     Unless otherwise indicated, the use of any Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs,

successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## FACTUAL ALLEGATIONS

**CALIFORNIA LAW RESTRICTS CREDITORS' RIGHTS WITH RESPECT TO PARTICULAR MORTGAGE LOANS**

10.     Under California Code of Civil Procedure ("CCP") § 726(a), also known as the "single action rule," a creditor is permitted to only one form of action for the recovery of any debt secured by a mortgage or deed of trust on real property.   This single action must be a foreclosure sale of the underlying property.

11.     CCP § 726(a) prohibits a lender from first pursuing a borrower directly for payment of a delinquent loan secured by a mortgage.   Rather, the lender must first pursue the real property through judicial foreclosure.   This is called the "security first rule."

12.     CCP § 726(a) is intended to protect the borrower from a multiplicity of suits.   Accordingly, a creditor cannot avoid the requirement that it must first pursue the real property underlying the loan by waiving its security in that property.   The objective of Section 726(a) is to force the creditor to pursue the property as the primary source for payment before looking to the creditor's other assets.  If the foreclosure sale does not satisfy all debts secured by the property, then the creditor can obtain a deficiency judgment for the remaining debt.

13.     However, if the residential property underlying a mortgage loan is owner-occupied, CCP § 580b further restricts a creditor's ability to collect on the debt and prohibits the creditor from obtaining any sum of money that is more than what can be recovered in a foreclosure of the underlying property.

14.     Specifically, Section 580b, known as the "anti-deficiency statute" provides:

///

BLOOD HURST & O'REARDON, LLP

00125325

(a)   . . . . [N]o deficiency judgment shall be owed or collected and no deficiency judgment shall lie, for any of the following: (1) After a sale of real property or an estate or years therein for failure of the purchaser to complete his or her contract of sale. (2) Under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate or years therein. (3) Under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan that was used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by the purchaser.  For purposes of subdivision (b), a loan described in this paragraph is a "purchase money loan."

(b)  No deficiency judgment shall be owed or collected, and no deficiency judgment shall lien, on a loan, refinance, or other credit transaction that is used to refinance a purchase money loan, or subsequent refinances of a purchase money loan . . . .

15.   This means that if a homeowner defaults on a mortgage loan or mortgage loans secured by the home in which he or she lives, all that the homeowner will be liable for in repaying the loans is the actual amount the underlying property can yield in a foreclosure sale.  If a foreclosure sale yields less than the value of the defaulted loan or loans, the creditor cannot seek to recover the shortfall.

16.   This is true even if the homeowner took out multiple loans for the purchase of the home.  If the homeowner defaults on all loans that are secured by the home and a foreclosure sale yields enough money only to pay the first loan (or only part of the first loan), the creditors holding the remaining loans cannot seek to recover any deficiency against the homeowner.

17.   The California Legislature enacted CCP § 580b to, among other things: (1) prevent the over-evaluation of land; (2) encourage home ownership; and (3) prevent a downturn in the economy that would likely occur if purchasers of land were burdened with personal liability in the event of falling home values.

18.   Although borrowers are no longer liable for debts covered by CCP § 580b, banks developed a practice whereby they, and debt collection agencies to whom secondary loans were sold, would attempt to collect from borrowers and report the debt negatively to credit reporting agencies in an attempt to force the

BLOOD HURST & O'REARDON, LLP

00125325

borrowers to pay.  Banks contended that although the debt could not be enforced because it was protected by CCP § 580b, the debt was still owed and thus, the banks could collect on it.  Borrowers who were unaware of the protections afforded by CCP § 580b and afraid of negative credit reports would pay on the debt.

19.   However, effective January 1, 2014, in an effort to end this misleading practice that was directly contrary to the purpose of CCP § 580b, the California Legislature amended CCP § 580b to explicitly prohibit the collection of any deficiency and any negative credit reporting related to an extinguished debt.  Thus, if a secondary loan on an owner-occupied home is not satisfied through a foreclosure sale, the debt is no longer owed and the creditor is prohibited from collecting on the debt, including reporting that debt to credit reporting agencies.

**DEFENDANTS' SCHEME TO END-RUN CALIFORNIA LAW PROTECTING HOMEOWNERS**

20.   During the economic downturn, the values of many of the properties underlying loans owned by Chase decreased significantly such that the value of the property underlying each of the loans was less than the total value of the loans secured by the property.

21.   For any of Chase's secondary loans secured by the properties (*e.g.*, a second mortgage), pursuant to Sections 726(a) and 580b, Chase would never be able to recover if the borrower defaulted.  Section 726(a) would require Chase to recover only in a foreclosure sale of the underlying properties, and Section 580b would prevent Chase from obtaining any more money than what could be obtained in a foreclosure sale.

22.   Where proceeds from foreclosure sales on the properties underlying secondary loans are insufficient to pay off the secondary loans and Chase cannot otherwise collect on the loans under the amended CCP § 580b, Chase attempted

BLOOD HURST & O'REARDON, LLP

1  to get around this predicament by releasing its lien on the secondary loans prior

2  to a foreclosure sale of the underlying properties and then selling the secondary

3  loans to debt collector Real Time.

4      23.   By releasing its lien on the secondary loans, Chase releases any

5  ability to legally enforce the debt in any action.  Therefore, the debts are not

6  legally enforceable.

7      24.   However, Chase continues to inform borrowers, including Plaintiff

8  and members of the Class that despite Chase releasing the liens, the borrowers

9  are "still responsible for the debt on [their] mortgage."  The form letter sent by

10  Chase to borrowers also states that "[t]his communication is an attempt to collect

11  a debt." Through this representation, which is included in form letters sent to

12  Plaintiff and members of the Class, Chase misrepresents that the debt is

13  enforceable.  Attached as Exhibit A is an exemplar of Chase's form letter.

14      25.   In the standard letter to Plaintiff and members of the Class

15  informing of the secondary loan being released, Chase also informs the borrower

16  that the account is now "serviced by Real Time Resolutions" and if the borrower

17  has any questions to "please call Real Time Resolutions at one of the phone

18  numbers below." *See* Exhibit A.

19      26.   Real Time also misrepresents the borrowers' obligations in form

20  letters that it sends to Plaintiff and members of the Class.  Real Time's form

21  letter states that "the lien which previously secured this loan to the property . . .

22  was released due to investor requirement; however, the account remains

23  collectable as an unsecured loan under the Balloon Note you originally signed."

24  Real Time's standard letter also states that "this is an attempt to collect a debt."

25  These statements further misrepresent that the debt is enforceable and legally

26  collectable when it is not.  Attached as Exhibit B is an exemplar of Real Time's

27  form letter.

28  ///

BLOOD HURST & O'REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT

00125325

27.     Debt collector Real Time then unlawfully begins collection attempts regarding the secondary loan.  This results in borrowers paying on the debts, even though the debts are not legally unenforceable or collectable under CCP § 580b.

**FACTUAL ALLEGATIONS PERTAINING TO PLAINTIFF TERRY**

28.     On March 10, 2006, Ms. Terry purchased her home with two loans. Ms. Terry obtained a loan secured by a first deed of trust in an amount of approximately $379,821.00 (the "First Mortgage") and second a loan secured by a second deed of trust in the amount of approximately $94,956.00 (the "Second Mortgage").  Both the First Mortgage and the Second Mortgage were used for the purchase of the Terry Property which as Ms. Terry's primary residence was then owner-occupied.  Thus both loans were considered to be purchase money and are therefore protected by CCP § 580b.  The Second Mortgage was later purchased by Chase and during the relevant time period was serviced by Chase.

29.     The Second Mortgage is a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

30.     Sometime thereafter, as a result of the severe economic turmoil plaguing the United States beginning in 2009, the Terry Property dramatically decreased in value, resulting in the value of the entire home being less than the amount owed on Ms. Terry's First Mortgage.  As a result, the Second Mortgage was nearly completely unsecured because there was no property value left by which to secure it.  As a result of the same economic downtown, Ms. Terry fell behind on payments owed on the Second Mortgage.

31.     In early September 2014, Ms. Terry received an unsolicited letter from Chase dated August 29, 2014.  In the letter, Chase referenced the account number associated with the Second Mortgage and stated, "We're releasing the mortgage lien on the account listed below."  The letter further stated, "[W]e are

BLOOD HURST & O'REARDON, LLP

releasing the lien on the mortgage loan referenced above.  This means **you are still responsible for the debt on your mortgage**, but you can now explore your options to sell or refinance if you desire." *See* Exhibit A (emphasis added).

32.     The letter further stated: "Your account is serviced by Real Time Resolutions.  If you have any questions, please call Real Time Resolutions at one of the telephone numbers below." *Id.*

33.     On September 2, 2014, Chase formally released Ms. Terry's Second Mortgage by causing to be recorded with the San Diego County Recorder's Office a Substitution of Trustee and Full Reconveyance which also referenced the account number associated with the Second Mortgage.

34.     In September 2014, Ms. Terry received a letter dated September 9, 2014, from Real Time referencing the Second Mortgage and stating that Real Time has "been unable to verify your claim that this loan was previously settled."  The letter acknowledged that the loan "was released due to investor requirement."  However, the letter stated it was "an attempt to collect a debt" and that "the account remains collectable as an unsecured loan under the Balloon Notes you originally signed." *See* Exhibit B.

35.     Thereafter, on January 10, 2015, in response to Defendants' letters, Ms. Terry sent Chase a payment in the amount of $100.00 to be applied to the debt purportedly owed related to the Second Mortgage.  On the check, Ms. Terry referenced the account number associated with the Second Mortgage.  Chase cashed this check on January 27, 2015.

36.     The Second Mortgage was a purchase money obligation.  As such, Ms. Terry was protected from any deficiency liability (and collection efforts) by virtue of CCP § 580b.  Moreover, because Chase voluntarily released the lien associated with the Second Mortgage it waived any ability to collect directly from Ms. Terry on the underlying obligation pursuant to CCP § 726(a).

///

BLOOD HURST & O'REARDON, LLP

37.     Real Time has no greater rights to the Second Mortgage than Chase. Accordingly, Real Time has no ability to collect directly from Ms. Terry.

38.     Nonetheless, Defendants misrepresented to Ms. Terry that she was still obligated under the mortgage and initiated misleading collection efforts in an attempt to force Ms. Terry to remit monies towards the debt associated with the Second Mortgage even though there was no debt owed under California law. Indeed, as a result of Defendants' illegal conduct and the threat of further collection proceedings, Ms. Terry remitted a payment to Chase for the Second Mortgage and which Chase accepted.

**CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

> California borrowers who obtained a residential mortgage loan owned or serviced by Chase and secured by real property located in the State of California, as to which, between July 28, 2011 through August 1, 2017, Chase (1) released the lien on the property securing the loan, and (2) directly or indirectly, thereafter attempted to collect or actually collected unpaid balances on the loan after the lien release.

40.     Excluded from the Class are: (a) members of the class action lawsuit entitled Banks, et al. v. JPMorgan Chase Bank, N.A., Case No. RG12614875 (Cal. Super. Ct.), including the settlement and related actions subject to the separate prior class action settlement in that action; and (b) the Judges to whom this action is assigned and any members of the Judges' staff or immediate family members.

41.     ***Numerosity***. The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and thereon alleges, that the proposed Class contains thousands of members.  While the precise number of Class members is unknown to Plaintiff, it is known to

BLOOD HURST & O'REARDON, LLP

00125325

1    Defendants.

2        42.    ***Existence and Predominance of Common Questions of Law and***

3    ***Fact.*** Common questions of law and fact exist as to all members of the Class and

4    predominate over any questions affecting only individual Class members.   All

5    members of the Class have been subject to the same conduct and their claims are

6    based on standard form contracts.   The common legal and factual questions

7    include, but are not limited to, the following:

8            a.   Whether Defendants have a policy of collecting deficiency balances

9                that are not owed by Plaintiff and the Class members;

10           b.   Whether Defendants' representations were likely to mislead a

11               reasonable consumer;

12           c.   Whether the alleged conduct constitutes violations of CCP § 580b;

13           d.   Whether the alleged conduct constitutes violations of California

14               Civil Code § 1788, *et seq.*;

15           e.   Whether the alleged conduct constitutes violations of California

16               Business & Professions Code § 17200, *et seq.*;

17           f.   Whether the alleged conduct constitutes violations of CCP § 726(a);

18           g.   Whether Plaintiff and Class members have sustained monetary of

19               property loss and the proper measure of that loss;

20           h.   Whether Plaintiff and Class members are entitled to declaratory and

21               injunctive relief; and,

22           i.   Whether Plaintiff is entitled to restitution.

23       43.    ***Typicality.*** Plaintiff's claims are typical of the claims of the

24   members of the Class.   Plaintiff is a member of the Class that she seeks to

25   represent.

26       44.    ***Adequacy of Representation.*** Plaintiff will fairly and adequately

27   protect the interest of the members of the Class.   Plaintiff has retained counsel

28   experienced in the prosecution of this type of class action litigation.   Plaintiff has

BLOOD HURST & O'REARDON, LLP

00125325

10                    Case No. 3:15-cv-01666-DMS-KSC
FIRST AMENDED CLASS ACTION COMPLAINT

no adverse or antagonistic interests to those in the Class.

45.  ***Superiority.***  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.  Further the adjudication of this action presents no unusual management difficulties.

46.  Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and proposed Class members.  Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class will continue to be misled and denied their rights.  Defendants have acted or refused to act on grounds that general applicable to the class so that injunctive and declaratory relief is appropriate to the Class as a whole.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL. CIV. CODE § 1788, *ET SEQ.*

47.  Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

48.  Defendants are "debt collectors" within the meaning of California Civil Code § 1788.2(c) because they regularly engage in debt collection.  The monies allegedly owed by Plaintiff and members of the Class are "debts" within

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00125325

the meaning of California Civil Code § 1788.2(d).

49.     California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") incorporates by reference and requires compliance with the provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* Cal. Civil Code § 1788.17.

50.     As described above, Defendants have violated these laws by: (a) making false representations concerning the character, amount, or legal status of any debt in asserting that the alleged debt to be owed by Plaintiff and the Class members, 15 U.S.C. § 1692e(2); (b) making false representations or using deceptive means to collect or attempt to collect on any debt, 15 U.S.C. § 1692e(10); and (c) using unfair or unconscionable means to collect or attempt to collect ay debt, including collecting amounts which were not expressly authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f(1).

51.     Pursuant to California Civil Code § 1788.30 and 1788.17, Plaintiff and the members of the Class are entitled to recover actual damages sustained as a result of Defendants' violations of the Rosenthal Act.  Such damages include, without limitation, monetary losses and damages, which damages are in an amount to be proven at trial.  In addition, pursuant to California Civil Code § 1788.30 and 1788.17, because Defendants' violation of the Rosenthal Act were committed willingly and knowingly, Plaintiff and the members of the Class are entitled to recover penalties of at least $1,000 per violation as provided for in the Rosenthal Act.

52.     Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to California Civil Code § 1780.30.

///

///

# COUNT II

## UNLAWFUL BUSINESS ACTS AND PRACTICES

### VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200

53.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

54.    For the reasons discussed above, Defendants violated (and on information and belief, continue to violate) the UCL by engaging in the above-described and prohibited unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices as part of their collection and attempted collection of mortgage debts that were not owed.

55.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct, including because she paid money that was purportedly owed relating to her Second Mortgage.

56.    The unsecured debts at issue were no longer owed by Plaintiff and Class members and Defendants were expressly prohibited from collecting on them.    Nonetheless, Defendants misrepresented the status of the loans and Plaintiff and Class members' obligations to pay, and collected on the loans.

57.    Defendants' above-described wrongful acts and practices also constitute unlawful, unfair and fraudulent business acts and practices within the meaning of the UCL.

58.    California Business & Professions Code § 17200 prohibits any "unlawful . . . business act or practice."  Defendants' above-described wrongful acts and practices constitute "unlawful" business acts and practices by, *inter alia*, systematically and continuously attempting to collect upon alleged debts neither owed by Plaintiff nor the Class members and misrepresenting the status of these debts and obligations due under them, and violating California Civil Code §§ 580b, 726(a), 1572, 1709, 1710, 1711, and 1788.17; and 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1).

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

59.     California Business & Professions Code § 17200 prohibits any "unfair . . . business act or practice." Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

60.     Plaintiff reserves the right to allege further conduct which constitutes other unlawful or unfair business acts or practices. Such conduct is ongoing and continues to this date.

61.     Defendants' above-described wrongful acts and practices also constitute "fraudulent" business acts and practices in that the representations and omissions described herein are false, misleading and/or likely to deceive reasonable consumers into believing they had to pay on a debt that was no longer owed.

62.     On information and belief, Defendants' above-described unlawful, fraudulent, and unfair business acts and practices continue to this day and are ongoing. As a direct and/or proximate result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiff and Class members have suffered injury in fact and lost money in connection with the payment of money on loans for which they are entitled to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

63.     Additionally, pursuant to Business & Professions Code § 17203, Plaintiff seeks an order and injunction requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices.

///

## COUNT III

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT,

### 15 U.S.C. § 1692, *ET SEQ.*

64.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

65.    Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, which prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

66.    Defendants violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the character, amount or legal status of deficiency balances that are not in fact legally owed by Plaintiff and the Class members.

67.    Defendants violated 15 U.S.C. § 1692e(10) by using false representations or deceptive means to collect or attempt to collect from Plaintiff and Class members debts purportedly owed under the mortgage agreements.

68.    Defendants violated 15 U.S.C. § 1692f's prohibition of using unfair or unconscionable means to collect or attempt to collect any debt by collecting monies from Plaintiff and Class members that were not expressly authorized by the mortgage agreement or permitted by law.  *See* 15 U.S.C. § 1692f(1).

69.    As a result of Defendants' violations of 15 U.S.C. § 1692, *et seq.*, Plaintiff is entitled pursuant to 15 U.S.C. § 1692k to actual damages, statutory damages, and the costs of the action, together with attorney's fees.

## COUNT IV

### DECLARATORY RELIEF

70.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

71.    A controversy has arisen and now exists between Plaintiff and Class members on the one hand and Defendants on the other.  The controversy between

BLOOD HURST & O'REARDON, LLP

00125325

the parties concerns the ability of Defendants to collect on the debts at issue. Plaintiff and the Class members contend that pursuant to CCP §§ 580b and 726(a), the debts are not collectable.  Defendants dispute this contention and contends that the debts are owed and thus, collectable.

72.    Plaintiff requests a judicial determination of her rights and duties, and the rights and duties of absent Class member and a declaration as to the collectability of the debts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    Certifying the Class as requested herein;

2.    Awarding Plaintiff and the proposed Class members actual and punitive damages;

3.    Awarding civil penalties;

4.    Awarding restitution to Plaintiff and the proposed Class members;

5.    Awarding declaratory and injunctive relief, enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6.    Awarding attorneys' fees and costs; and

7.    Providing such further relief as may be just a proper.

## JURY DEMAND

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 21, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)

By:    _s/ Thomas J. O'Reardon II_
THOMAS J. O'REARDON II

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

HOFFMAN & FORDE,
    ATTORNEYS AT LAW
DANIEL FORDE (248461)
SCHUYLER HOFFMAN (255632)
3033 Fifth Avenue, Suite 225
San Diego, CA 92103
Tel: 619/546-7880
619/546-7881 (fax)
dforde@hoffmanforde.com
shoffman@hoffmanforde.com

LAW OFFICE OF PETER FREDMAN
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA 94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

*Attorneys for Plaintiff*

BLOOD HURST & O'REARDON, LLP

# Exhibit A



**CHASE** ⬡

OH4-7304C
3415 Vision Drive
Columbus, OH 43219-6009

August 29, 2014

00003267-0009
JAMES TERRY
CARMEN TERRY
▮▮▮▮▮▮▮▮
OCEANSIDE, CA 92056-6219

⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿⫿

**We're releasing the mortgage lien on the account listed below**

Account:
Property Address:        ▮▮▮▮▮▮▮▮▮▮▮▮
                         Oceanside, CA 92056

Dear James Terry and Carmen Terry,

We are writing to let you know that we are releasing the lien on the mortgage loan referenced above. This means you are still responsible for the debt on your mortgage, but you can now explore your options to sell or refinance, if you desire. You don't need to sign or return anything for this to happen.

**As part of these changes, we:**
- Will forward or have forwarded the release to your county records office for processing. Depending on your county's procedures, this may take several months.
- No longer pay property taxes or insurance on your behalf, if your loan has a current escrow account. Your escrow account, as well as any optional insurance product, will close.
- Refund any remaining escrow balances on the account you are entitled to.
- No longer be responsible for securing the property and/or providing maintenance that may be required by the city, if the property is vacant.

**What you need to do:**
- Contact your insurance company and/or taxing authority to make arrangements for paying any remaining or new amounts due.
- Pay any taxes and/or insurance premiums associated with the property.
- Provide your address to your homeowners' insurance agent and taxing authority so they forward future bills and correspondence directly to your address.

Please note: You have the right to occupy the property until you sell the home or the title is transferred.



LENDER  ©2014 JPMorgan Chase & Co. JPMorgan Chase Bank, N.A.                    LC-LRPIMBA

Your account is serviced by Real Time Resolutions. If you have any questions, please call Real Time Resolutions at one of the telephone numbers below.

Sincerely,

Chase
1-888-741-1142

Important Legal Information

This communication is an attempt to collect a debt and any information obtained will be used for that purpose.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

# Exhibit B



**REAL TIME**
**R E S O L U T I O N S**®

September 09, 2014

JAMES TERRY & CARMEN TERRY

OCEANSIDE CA  92056

Regarding Loan Number: █████████

Dear JAMES TERRY & CARMEN TERRY:

Thank you for contacting Real Time Resolutions, Inc. ("Real Time") regarding the above-referenced account.  In a recent telephone conversation with our office, you disputed this loan.  The account has been reviewed and the results of our research are provided below:

| | |
|---|---|
| **Concern 1:** | You believe this account was settled. |
| **Resolution 1:** | We have been unable to verify your claim that this loan was previously settled.  If you believe the account was previously settled, please provide Real Time with documentation (i.e. 1099C form) supporting your claim.  Please be advised the lien which previously secured this loan to the property commonly known as ██████████ Oceanside, CA 92056 was released due to investor requirement; however, the account remains collectable as an unsecured loan under the Balloon Note you originally signed.  We have enclosed a copy of the letter previously sent to you by Chase regarding the lien release.  For your records we have enclosed a copy of the signed Balloon Note, detailing your promise to pay a specific sum under explicit terms, and under which the outstanding balance remains collectable as an unsecured loan. |

Real Time is committed to customer service and hopes this correspondence addresses your concerns.  Should you have any further questions or wish to discuss payment options with us, please contact our office at 1-877-599-2843.

Sincerely,

Jason Thompson
Research Analyst

IMPORTANT NOTICE REQUIRED BY LAW:
Federal law requires us to notify you that (a) Real Time Resolutions, Inc. is considered a debt collector, (b) this is an attempt to collect a debt and (c) any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this letter is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.
They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.
For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.
For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Main 214-599-6363 * Toll Free 1-877-469-REAL (7325)